IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **TIMOTHY KANA DAWSON**, <br><br> Petitioner-Defendant. | Case No. 3:03-cr-410-SI <br> 3:04-cr-010-SI <br> 3:05-cr-073-SI <br><br> **OPINION AND ORDER** |

Billy J. Williams, United States Attorney and Jennifer Martin, Assistant United States Attorney, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Plaintiff.

Stephen R. Sady, Chief Deputy Federal Defender and Elizabeth G. Daily, Assistant Federal Public Defender, FEDERAL PUBLIC DEFENDER'S OFFICE FOR THE DISTRICT OF OREGON, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Before the Court is Timothy Kana Dawson's motion for relief under 28 U.S.C. § 2255, seeking to vacate his 60-month mandatory consecutive sentence imposed for possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). (Count 2, Case No. 3:03-cr-410). For the reasons given below, his motion is denied.

## STANDARDS

Section 2255 permits a prisoner in custody under sentence to move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a).

Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting 28 U.S.C. § 2255). A motion pursuant to § 2255 must be filed within one year from the date on which a petitioner's conviction becomes final, unless an exception applies. *Id.* § 2255(f)(1). One exception provides that a motion is timely if (1) it "assert[s] . . . [a] right . . . newly recognized by the Supreme Court," *id.* § 2255(f)(3), (2) it is filed within one year from "the date on which the right asserted was initially recognized by the Supreme Court," *id.* § 2255(f)(3), and (3) the Supreme Court or controlling Court of Appeals has declared the right retroactively applicable on collateral review, *Dodd v. United States*, 545 U.S. 353, 358-59 (2005). Only the Supreme Court may "recognize" a new right under § 2255(f)(3). *Dodd*, 545 U.S. at 357-59. In order to show that his or her claim relies on a new rule of constitutional law, a movant must show that "(1) he or she was sentenced in violation of the Constitution and that (2) the particular constitutional rule that was violated is 'new,' [and] was 'previously unavailable'" *United States v. Geozos*, 870 F.3d 890, 895 (9th Cir. 2017).

## BACKGROUND

On February 24, 2005, Dawson pleaded guilty to one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 1 in Case No. 3:04-cr-010), four counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a) (Counts 2 through 4 in Case No. 3:04-cr-010 and Count 1 in Case No. 3:03-cr-410), one count of possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(a) (Count 2 in Case No. 3:03-cr-410), and one count of escape, in violation of 18 U.S.C. § 751(a) (Count 1 of the information in Case No. 3:05-cr-073). On November 1, 2005, Dawson was sentenced to five concurrent sentences of 202 months for each of the substantive robbery offenses, a concurrent 60-month sentence for the escape charge, and a mandatory consecutive sentence of 60 months for the § 924(c) violation.

## DISCUSSION

Dawson argues that he is entitled to resentencing on two independent grounds. First, Dawson argues that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*), invalidated his mandatory consecutive sentence under § 924(c). Second, Dawson argues that the Supreme Court's decision in *Dean v. United States*, 137 S. Ct. 1170 (2017), entitles him to a new sentencing hearing in which the sentencing judge has discretion to consider the suitability of his aggregate sentence.

### A.  Relief under *Johnson II*

Dawson argues that the 60-month mandatory consecutive sentence under § 924(c) is unconstitutional after the Supreme Court's decision in *Johnson II*. In June 2015, the Supreme Court struck down as unconstitutionally vague the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A)(iii). *Johnson II*, 135 S. Ct. at 2563. The residual clause defined a "violent felony," in part, as one that "involves conduct that presents a

serious potential risk of physical injury to another." In *Johnson II*, the Court observed that the residual clause required courts "to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury" in determining whether certain crimes were "violent felonies." *Id*. at 2557 (2015). The Court found that the "indeterminacy of th[is] wide-ranging inquiry . . . denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* As such, imposing a mandatory increase in a defendant's sentence under the clause was an unconstitutional denial of due process. *Id.* The next year, in *Welch v. United States*, the Court held that *Johnson II* had announced a new substantive rule that applies retroactively on collateral appeal. 136 S. Ct. 1257, 1268 (2016).

Dawson, however, was not sentenced under the residual clause of the ACCA. Instead, he was sentenced under § 924(c), which defines a "violent felony" as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Clause (A) of this definition is known as the "force clause," and clause (B) is known as the "residual clause." Dawson argues that under the new rule announced in *Johnson II*, the residual clause of § 924(c) must also be struck down as unconstitutionally vague. Because he filed his claim within one year of this new rule being announced, Dawson argues, his claim is not time-barred. The government responds that Dawson's § 2255 claim is time-barred under 28 U.S.C. § 2255(f)(3) because it was filed more than one year after his sentence became final, and the constitutional rule that he asserts is not the same rule that was recognized in *Johnson II*.

The government further argues that, even if Dawson's claim is not time-barred, his sentence was proper because unarmed bank robbery under 18 U.S.C. § 2113(a) is a crime of violence under the force clause of § 924(c)(3)(A). Thus, any reliance by the sentencing court on § 924(c)(3)(B) was harmless error. Indeed, in *United States v. Watson*, the Ninth Circuit held that "bank robbery 'by force and violence, or by intimidation' is a crime of violence." 881 F.3d 782, 786 (2017). Although *Watson* specifically considered whether *armed* bank robbery is a crime of violence under § 924(c), the holding rested on the conclusion that unarmed bank robbery is also a crime of violence. Because "[a] conviction for armed bank robbery requires proof of all the elements of unarmed bank robbery," the court reasoned, armed bank robbery cannot involve less force than unarmed bank robbery and is therefore a crime of violence. *Id.* Thus, any attempt to distinguish unarmed bank robbery from armed bank robbery under *Watson* would be artificial. Because Dawson's petition must fail on the merits, this Court need not consider whether his petition was timely filed.

There is, however, some tension in the *Watson* opinion's claim that "a defendant may not be convicted [of bank robbery] if he only negligently intimidated the victim," *id.* at 785 (citing *Carter v. United States*, 530 U.S. 255, 269 (2000)), and previous Ninth Circuit opinions on the mens rea requirement for a bank robbery conviction. The defendant in *Watson* argued, as Dawson argues in this case, that a defendant who merely negligently intimidated a victim could be convicted of bank robbery. Such negligent conduct, Dawson argues, does not rise to the Supreme Court's requirement that a crime of violence involve "a higher degree of intent than negligence or merely accidental conduct" with regard to the "force" element. *See Leocal v. Ashcroft*, 543 U.S. 1 (2004). If a conviction for bank robbery by intimidation includes conduct of lesser culpability than a felony committed by the "threatened use of physical force," then under

the categorical approach, bank robbery cannot be considered a crime of violence. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).

The *Watson* opinion responded to this argument by citing a line of dicta from *Carter v. United States*, which notes that a conviction under § 2113(a) requires a finding that the defendant "possessed knowledge with respect to . . . the taking of property of another by force and violence or intimidation."881 F.3d at 785 (quoting 255 U.S. at 268). Thus, the Ninth Circuit concluded, "[t]he offense must at least involve the knowing use of intimidation." *Id.* at 785.

In *United States v. Selfa*, however, the Ninth Circuit defined "bank robbery by intimidation" as "willfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm." 918 F.2d 749, 751 (9th Cir. 1990). This definition contemplates the defendant's mens rea with regard to only the "taking" element of bank robbery, but not with regard to the "intimidation" element. Similarly, in *United States v. Foppe*, the Ninth Circuit held that the trial court "should not instruct the jury on specific intent" because "[t]he determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions." 993 F.2d 1444, 1451 (9th Cir. 1993) (quoting *United States v. Alsop*, 479 F.2d 65, 67 n.4 (9th Cir. 1973)) (quotation marks omitted). As defined in *Selfa* and *Foppe*, the intimidation element is met by any conduct "that would put a . . . reasonable person in fear of bodily harm" and is evaluated objectively, without regard to the defendant's actual mental state. Under *Elonis v. United States*, such conduct could be satisfied by only a negligent threat. 135 S. Ct. 2001, 2011 (2015) (concluding that a threat is committed negligently when the mental state turns on "whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks"). Although *Foppe* and *Selfa* both pre-date *Carter*, the Eighth Circuit relied on *Foppe* in a case decided after *Carter* to hold that "the mens rea element of bank

robbery [does] not apply to the element of intimidation." *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003). In addition, the Ninth Circuit's model jury instructions as of February 2018 continue not to recommend an instruction on the defendant's "knowing use of intimidation" but rather propose only that the jury find that the defendant took the bank's money "through . . . intimidation." Manual of Model Criminal Jury Instruction § 8.162 (Ninth Circuit Jury Instruction Comm. 2017).

In the Ninth Circuit, and other circuits, a simple demand for money is sufficient to establish intimidation under § 2113(a). *See, e.g., United States v. Nash*, 946 F.2d 679, 681 (9th Cir. 1991) ("[T]he threat implicit in a written or verbal demand for money is sufficient evidence to support [a] jury's finding of intimidation."); *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983) (upholding a conviction where "the evidence showed that [the defendant] spoke calmly, made no threats, and was clearly unarmed" because "'express threats of bodily harm, threatening body motions, or the physical possibility of concealed weapon[s]' are not required for a conviction for bank robbery by intimidation." ). The Fourth Circuit upheld a conviction for robbery by intimidation where the defendant handed a teller a note that read: "These people are making me do this," and then stated, "They are forcing me and have a gun. Please don't call the cops. I must have at least $500." *United States v. Ketchum*, 550 F.3d 363, 365 (4th Cir. 2008). The Tenth Circuit upheld a conviction for bank robbery where a defendant entered a bank, walked behind the counter, and removed cash from the tellers' drawers, but did "not speak or interact with anyone, beyond telling a bank manager to 'shut up.'" *United States v. Slater*, 692 F.2d 107, 107-08 (10th Cir. 1982); *accord United States v. O'Bryant*, 42 F.3d 1407 (10th Cir. 1994) (Table) (affirming a finding of intimidation where the defendant merely reached over the counter and took money from an open teller drawer after asking the teller for change).

It may be that any demand for money in the course of a bank robbery, regardless of any explicitly threatening statement or conduct, always carries an implicit threat of violence. The Ninth Circuit's decision in *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016), however, seems to reject the premise that an implicit threat is sufficient to render an armed robbery a crime of violence. In *Parnell*, the Ninth Circuit considered whether a defendant's prior conviction for armed robbery in Massachusetts was a crime of violence under the force clause of the ACCA, and held that it was not. *Id.* at 980. The court was "not persuaded a simple [purse] snatching necessarily entails an implied threat to use violent force to overcome a victim's potential resistance. Although some snatchers are prepared to use violent force to overcome resistance, others are not." *Id*. The court elaborated that a threat to use violent force cannot be implicit but rather "requires some outward expression or indication of an intention to inflict pain, harm or punishment." *Id.* This principle may apply equally to bank robbery. Although some bank robbers are prepared to use violent force to overcome resistance, others are not. The answer may be that in *demanding* either a purse or a bank's money, a defendant makes an outward manifestation of "an intention to inflict pain, harm or punishment" if the victim does not comply, and by simply *taking* the purse or money, the defendant makes no such outward manifestation. Such a distinction could lead to the surprising conclusion that a demand for another person's property is a crime of violence, while the forcible taking of that property is not.[1] Nevertheless, the

---

[1] The Ninth Circuit has held that several state robbery crimes are nonviolent because the amount of physical force involved is not necessarily "violent," even where the physical force must be sufficient to overcome the victim's resistance. *See, e.g., United States v. Geozos*, 870 F.3d 890, 900-01 (2017) (Florida robbery and armed robbery offense is nonviolent, even where the victim must resist and be overcome by defendant's physical force); *United States v. Strickland*, 860 F.3d 1224, 1227 (9th Cir. 2017) (Oregon robbery statute offense is nonviolent because the "physical force" requirement "doesn't require physically violent force.").

disposition of this case appears to be dictated by *Watson*. Given the tension between *Carter* and the case law described above, however, it is appropriate to issue a certificate of appealability.

## B. Relief under *United States v. Dean*

Dawson argues that, in the alternative, he is eligible for resentencing under *Dean v. United States*, 137 S. Ct. 1170 (2017). When Dawson was sentenced, the rule in the Ninth Circuit was that sentencing courts could not take into consideration the mandatory consecutive sentence imposed under § 924(c) when calculating the length of the prison term for the predicate crime. In *Dean*, the Supreme Court held that neither 18 U.S.C § 3553(a), which specifies the factors that courts are to consider in imposing a sentence, nor § 924(c) itself bars sentencing courts from considering mandatory consecutive sentences when calculating the duration of the predicate sentence. Thus, for example, a sentencing court may sentence a defendant to one day (for the predicate crime) plus 60 months (for the mandatory consecutive sentence under § 924(c)) if that sentencing judge finds, taking into consideration all § 3553(a) factors, such an aggregate sentence is the just one.

Because Dawson was sentenced under § 924(c) in the pre-*Dean* regime under which the Ninth Circuit restricted sentencing courts' discretion, and because he filed his § 2255 motion within one year of *Dean* being announced, Dawson argues that he is entitled to a resentencing hearing. The government responds that *Dean* does not apply retroactively because it did not announce a new substantive constitutional rule.

Neither party argues that *Dean* did not announce a new rule. Instead, the specific question in this case is whether *Dean* announced a new procedural rule or a new substantive rule. A new procedural rule is presumptively not retroactive, and would thus not apply to Dawson's conviction, which became final before the rule was announced. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). A new substantive rule is presumptively retroactive and would thus potentially

PAGE 9 – OPINION AND ORDER

be grounds for sentencing relief. *Id.* at 352. "[R]ules that regulate only the *manner of determining* the defendant's culpability are procedural." *Id.* at 353. Rules that "alter[] the range of conduct or the class of persons that the law punishes" are substantive. *Id.*

In *Schriro*, the Supreme Court held that the rule announced in *Ring v. Arizona*, 536 U.S. 584, 609 (2002)——that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty"—was procedural. *Id.* (citation omitted) (alteration in original). The Court described the rule as "alter[ing] the range of permissible methods for determining whether a defendant's conduct is punishable by death," and reasoned that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Id.* The Ninth Circuit later relied on this reasoning to hold that the rule announced in *Booker*—that the United States Sentencing Guidelines are advisory and not mandatory—was a procedural rule. *United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005) (citing *Schriro* to hold that rules that allocate decisionmaking between judges and juries are procedural). *Schriro* and *Booker* both specifically considered the allocation of decisionmaking between judges and juries.[2] The *Dean* rule, however, does not—it clarifies that judges have the discretion, but are not required, to consider mandatory minimums when calculating the appropriate length of a predicate sentence. Such a distinction, however, does not alter the fact that the *Dean* rule, like the rules in *Schriro* and *Booker*, altered only "the range of permissible methods for determining whether a defendant's conduct is punishable" by a specific sentence length, but did not "alter[] the range of conduct or class of persons that the law punishes." Also,

---

[2] Although best remembered for its remedy—that the Guidelines are advisory and not mandatory—the holding in *Booker* was that the mandatory Guidelines regime violated the Sixth Amendment's guarantee that "[a]ny fact . . . necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict" must be found by a jury and not a judge. 543 U.S. 220, 244 (2005). *Booker*, like *Schriro*, thus dealt with the allocation of decisionmaking between the judge and jury.

like the rules in *Schriro* and *Booker*, the *Dean* rule "merely raises the possibility that someone convicted"—or, here, sentenced—"with use of the invalidated procedure might have been acquitted"—or, here, sentenced less harshly. *Schriro*, 542 U.S. at 352.

Dawson relies on the Supreme Court's decision in *Montgomery v. Louisiana* to argue that a rule may be substantive even if it does not forbid a certain punishment for a certain class of people, but only alters the degree of a sentencing judge's discretion. In *Montgomery*, the Supreme Court held that its rule in *Miller*—that mandatory life sentences without the possibility of parole are unconstitutional for minor defendants—was retroactive. 136 S.Ct. 718, 735 (2016). Dawson argues that "*Miller* did not forbid life sentences," but merely imposed a requirement that judges consider a defendant's immaturity and potential for rehabilitation at sentencing. It may be true that the original *Miller* opinion did not appear to impose such a categorical bar,[3] but *Montgomery* made clear that "States [are not] free to sentence a child whose crime reflects transient immaturity to life without parole. To the contrary, *Miller* established that this punishment is disproportionate under the Eighth Amendment." *Id.* at 735. *Montgomery* explicitly relied on this characterization of *Miller* to distinguish the rule in *Miller* from other cases that held that "the processes in which States must engage before sentencing a person to death" were not retroactive. *Id.* at 736 ("The processes [in other cases] may have had some effect on the likelihood that capital punishment would be imposed, but none of those decisions rendered a certain penalty unconstitutionally excessive for a category of offenders.").

---

[3] Justice Scalia, dissenting in *Montgomery*, agreed with the position urged by Dawson that *Miller* did not categorically bar any class of punishment and for this reason, among others, wrote that the rule in *Miller* could not be applied retroactively on collateral appeal. 136 S.Ct. 718, 744 (Scalia, J. dissenting) ("It is plain as day that the majority is not applying *Miller*, but rewriting it.").

In *Montgomery*, the Court emphasized the distinction between the procedural component of the rule announced in *Miller*—the requirement that "youth and its attendant characteristics" be considered as sentencing factors—and the actual substantive rule that mandated that *Miller* apply retroactively—that "children whose crimes reflect transient immaturity" may not be sentenced to life without parole under the Eighth Amendment. *Montgomery* recognized that the requirement for courts to consider a defendant's youth was a procedural rule, but reasoned that it was a procedural mechanism necessary to implement the substantive rule announced in *Miller* that the Eight Amendment bars certain defendants from a sentence of life without parole. *Id.* at 735 ("[The procedural element] does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity."). The rule in *Dean* resembles the procedural component of the rule in *Montgomery*, insofar as it alters sentencing judges' discretion. Unlike in *Montgomery*, however, there is no attendant substantive rule that the procedural mechanism was created to achieve. *Dean* was about a sentencing judge's discretion, which is a procedural concern. *Miller* was about the unusual cruelty of sentencing children to life in prison without the possibility of parole for crimes arising from their immaturity, which is a substantive concern. Thus, because *Miller* did place certain "punishment beyond the State's power to impose," *Montgomery* does not stand for the proposition that a rule may be substantive where it affects only a sentencing judge's exercise of discretion. Because the rule in *Dean* affects only the sentencing judge's discretion in calculating a sentence, it is procedural under *Schriro*, not substantive, and does not retroactively apply to Dawson's case. Because the Ninth Circuit has not yet ruled on the retroactivity of *Dean*, however, a certificate of appealability is appropriate.

## CONCLUSION

Defendant's motion to vacate, correct, or set aside his sentence (ECF 62) is DENIED. The Court grants, however, a Certificate of Appealability on the issues of whether unarmed bank robbery in violation of 18 U.S.C. § 2113(a) is a crime of violence under U.S.C. § 924(c)(3)(A), and whether the rule announced in *United States v. Dean* is retroactive for purposes of collateral appeal.

**IT IS SO ORDERED**.

DATED this 27th day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge